# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HERIBERTO SANCHEZ, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT |
| MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; and ENCORE CAPITAL GROUP, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT FOR RELIEF PURSUANT
TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

NOW COMES the Plaintiff, HERIBERTO SANCHEZ ("Heriberto"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC., and ENCORE CAPITAL GROUP, INC. (collectively "Defendants"), as follows:

**NATURE OF THE ACTION**

1.  Plaintiff brings this action for damages for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA") and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et. seq. ("ICFA").

**JURISDICTION AND VENUE**

2.  This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692k (FDCPA) and 28 U.S.C. §§1331, 1337, as this action arises under the laws of the United States, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Northern District of Illinois and all of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

## PARTIES

4. Heriberto is a natural person who resides in the Northern District of Illinois and is a "consumer" as defined by the FDCPA, 15 U.S.C. §1692a(3).

### Midland

5. Defendant Midland Funding, LLC ("Midland") is a limited liability company organized under Delaware law with a place of business located at 8875 Aero Drive, Suite 200, San Diego, California 92123 and another at 3111 Camino Del Rio N., Suite 1300, San Diego, California 92108. Midland conducts and transacts business in Illinois. Midland's Illinois registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

6. Midland is in the business of taking title or claiming to take title to charged-off debts allegedly owed by consumers and originally owed to others.

7. Midland then seeks to enforce the alleged debts against the consumers through lawsuits.

8. The mails and telephone system are used in connection with the prosecution of the Midland lawsuits.

9. Midland is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

### MCM

10. Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation with a place of business located at 8875 Aero Drive, Suite 200, San Diego, California 92123 and

another at 3111 Camino Del Rio N., Suite 1300, San Diego, California 92108. MCM conducts and transacts business in Illinois. MCM's Illinois registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

11. MCM is a collection agency. It both owns debts and acts as a collection agency for Midland.

12. MCM uses the mails and telephone system to conduct its business.

13. MCM is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

**Encore**

14. Midland and MCM are under common ownership. Both are subsidiaries of Encore Capital Group, Inc. ("Encore"), a publicly-traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, California 92123.

15. Encore has stated in its filings with the SEC that it is "a leader in consumer debt management and recovery solutions …[w]e purchase portfolios of defaulted consumer receivables at deep discounts to face value and use a variety of operational channels to maximize our collections from these portfolios." *See* Exhibit A, a true and correct copy of the Form 10-K filed by Encore with the SEC for year ending Dec. 31, 2012, original page 1, available at: http://www.sec.gov/Archives/edgar/data/1084961/000119312513055397/d443977d10k.htm (last visited September 27, 2013).

16. Encore secures funds from investors and lenders for the purpose of purchasing the debts to which Midland claims to take title.

17. Encore also makes decisions concerning the types, sources of, and prices of debts acquired.

18. Further, Encore devises the collection strategies used by Midland and MCM.

19. Encore participated in the debt collection activities complained of in this case.

20. Encore is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6), because of its involvement in debt collection activities.

## FACTS SUPPORTING CAUSE OF ACTION

21. Defendants have been attempting to collect from Heriberto a debt alleged to have been originally owned by HSBC Bank Nevada, N.A. ("HSBC" or "HSBC account").

22. On December 5, 2013, Midland filed a complaint in the Circuit Court of Cook County, Illinois against Heriberto. The case was captioned *Midland Funding LLC v. Heriberto Sanchez*, case number 2013-M1-167223 ("Collection Case"). *See* Exhibit B, a true and correct copy of the December 5, 2013 complaint ("Midland's Complaint").

23. In the Collection Case, Midland alleges that it purchased and now owns the HSBC account. The Collection Case was solely supported by the affidavit of Paula Fruth ("Fruth"), a purported employee of MCM. *See* Exhibit B-1.

24. The Fruth affidavit merely states a balance due, and provides no proof that Midland owns the underlying debt. *Id.*

### The Debt Buying Industry

25. Midland is a debt buyer. Debt buying is the practice of purchasing charged-off debts from debt originators, or other debt buyers. These debts are purchased in bulk and are usually credit card debts.

26. The debts sold are typically bundled into portfolios because bundling accounts into portfolios reduces the transaction costs of exchange. *See* Federal Trade Commission, The Structure and Practices of the Debt Buying Industry, January 2013, available at

4

http://www.ftc.gov/reports/structure-practices-debt-buying-industry (last visited March 5, 2014) ("FTC Debt Buyer Report").

27. When purchased, these bundled account portfolios are transferred via electronic data files that contain only a few data elements from the original account records. When printed out, the electronic evidence of the sale, or data file, consists of one line per debtor.

28. The typical data file contains the original account number, the name of the consumer, the address of the consumer, the last balance purportedly owed, the date of the last payment, and the date that the account was charged-off. *Id*. at pp. 34-35.

29. Debt buyers generally do not obtain the original account records (the day-to-day transactions on the account that are generally made at or near the time of each transaction, in the normal course of business) related to the purchased debts. For most portfolios, buyers do not receive any documents at the time of purchase. Only a small percentage of portfolios include documents such as account statements or the terms and conditions of credit. *Id*. at p. iii.

30. The data files obtained by debt buyers are not the original account records that were created in the regular course of business by the credit originator—they are created prior to the sale of a portfolio of charged-off debts. They are created for sale to a third party, and are not created in the regular course of servicing the credit card account.

31. Furthermore, debt sales are typically "as-is" with limited or no ability to obtain additional information from the original creditor. *Id.* at p. 25.

32. Where different debt buyers enter into purchase and sale agreements with the same seller, the structure, organization, and phrasing of these agreements are virtually identical. *Id.* at pp. 24-25.

33. Midland relied on the information that it apparently obtained from HSBC (the data file) when it filed the Collection Case.[1]

34. However, Midland had absolutely no assurance that the information it received was accurate because, on information and belief, HSBC (or HSBC's successor in interest) sold its debts to Midland in "as-is" condition.

35. The information on which Defendants relied to file the state court action would not be considered satisfactory evidence if submitted to court. A document is not admissible as a "business record" under Illinois law if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness …" Illinois R. Evid. 803(6).

### Pattern and Practice in State Court Collection Actions

36. It is common practice in the industry to purchase debts without obtaining original account information due to the time and cost of obtaining such documentation.

37. Midland routinely files state court collection actions with no more evidence of the debt in question than the single line data file described above.

38. Midland knows that the information on which it relies to file the state court collection actions will not be supported with adequate evidence, yet Midland is not willing or not able to obtain such evidence.

39. Usually when Midland files a collection action it obtains a default judgment against the consumer.

40. Upon information and belief, the default rate in such lawsuits may be as high as ninety percent.

---

[1] It is actually unclear from Midland's Complaint and Fruth affidavit whether Midland obtained the data file directly from HSBC, or from a subsequent debt-buyer. Regardless, if the HSBC account was sold, it was done so in the manner described above; any subsequent buyer would have received the one-line data file "as-is."

41. The default rate is so high in the collection actions because Midland serves the consumer with a complaint and affidavit affirming Midland's ability to prove the information contained therein.

42. The purpose of such affidavits is to deceive the consumer into believing that Midland can prove the case at trial and to intimidate the consumer into payment.

43. The collection case affidavits are deceptive because they purport to be based on a review of "business records … kept in the regular course of business" by MCM. In truth, the affidavits are created from the one-line data file that Midland allegedly purchased "as-is." *See* Exhibit B-1.

44. The affidavits are not created from the original records of HSBC, but rather are based on the unverified data file allegedly purchased from HSBC (or HSBC's successor in interest).

45. By submitting such an affidavit to the consumer, while concealing documents in which the alleged account seller effectively disclaims the accuracy of its records and information, Midland perpetrates a fraud on the consumer.

46. Accordingly, the consumer is discouraged from defending the lawsuit or challenging the allegations contained in the complaint and affidavit.

47. Midland actively conceals the nature of its defective standing thus an unsophisticated consumer would not know that these "as-is" purchase agreements exist.

48. An unsophisticated consumer would not be aware of the elements of the business records exception to the rule against hearsay.

49. When Midland files a collection action against a consumer, it implicitly represents that the allegations and factual contentions contained in the complaint and affidavit are backed by evidentiary support. Federal Rule of Civil Procedure 11(B)(3) states:

> REPRESENTATIONS TO THE COURT. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> []
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery

Fed R. Civ. Proc. 11(B)(3).

50. In these *ex parte* collection actions Midland does not disclose to the court that it has not conducted a reasonable investigation into its claims or that it could never present evidence to support its claims. *See* Comment 14 to Rule 3.3 of the Illinois Rules of Professional conduct, which states: "… in any *ex parte* proceeding … [t]he lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision."

51. Midland does not conduct a reasonable investigation into a debt's existence in the collection actions it files; rather Midland intends to obtain a default judgment against the consumer by representing to the consumer and the court, through the filing of its complaint and affidavit, that it has evidence to support the claims stated therein.

52. This practice amounts to an unfair, deceptive and improper use of the court system in connection with the collection of a debt.

53. Once the default judgment is entered, Midland can proceed to garnishment regardless of whether it could have proved its case at trial.

54. Midland routinely voluntarily dismisses cases where the consumer appears before the court to defend the action in order to protect its business model and avoid losing at trial.

55. A recent supervisory report issued by the Consumer Finance Protection Bureau states that its examiners found that, in 70% of lawsuits filed by a debt buyer, the debt buyer dismissed its case when the consumer filed an answer. Consumer Financial Protection Bureau, *Supervisory Highlights*, Spring 2014, pg. 14, available at: http://files.consumerfinance.gov/f/201405_cfpb_supervisory-highlights-spring-2014.pdf (last visited June 11, 2014).

56. The report stated, "Despite the entity's express or implied representations to consumers that it intended to establish that consumers owed a debt in the amount claimed in court filings, in numerous instances, the entity misled consumers because it demonstrably had no such intention." *Id.*

### Heriberto's Defense of the Collection Case

57. On or about January 23, 2014, Midland obtained a default judgment against Heriberto. *See* Exhibit C, a true and correct copy of the Collection Case electronic docket.

58. On February 19, 2014, Heriberto retained Sulaiman Law Group, Ltd. ("Defense Counsel") to defend the Collection Case. Heriberto, via Defense Counsel, filed his appearance and his motion to vacate the January 23, 2014 default judgment. *Id*.

59. On March 6, 2014, Heriberto's motion to vacate was granted, and the Collection Case was set for status on April 17, 2014. *See* Exhibit D, a true and correct copy of the March 6, 2014 Collection Case order.

60. On April 17, 2014, Midland voluntarily dismissed the Collection Case. *See* Exhibit E, a true and correct copy of the Collection Case order entered on April 17, 2014.

61. It can be reasonably inferred that Midland voluntarily dismissed the Collection Case because Midland knew that it could not demonstrate the accuracy of the information contained in its complaint, or that it even owned the HSBC account at all.

62. The Illinois Code of Civil Procedure requires that a plaintiff provide notice to the defendant when the plaintiff intends to voluntarily dismiss its case. *See* 735 ILCS 5/2-1009.

63. Midland never provided Heriberto with formal notice of its intention to dismiss its case—notice was not provided in writing, no motion was filed with the court, and Defense Counsel did not receive even verbal notice until the April 17, 2014 status hearing.

64. Even if Midland had intended to take the Collection Case to trial, it would have been unable to prevail at trial due to its lack of evidence demonstrating ownership of the HSBC account and the accuracy of the information contained in its complaint described above.

65. By operation of law, Midland has one year or until the statute of limitations expires, whichever is longer, to re-file its case against Heriberto.

66. Heriberto is left to wonder when or if he will be served with another summons containing another deceptive affidavit.

67. This uncertainty has caused Heriberto significant stress and emotional distress.

68. Heriberto was harmed by Defendants' unfair and deceptive practices because he had to spend time and energy defending against Midland's frivolous lawsuit.

69. Heriberto was further harmed by Defendants' unfair and deceptive practices, as he incurred costs defending against Midland's frivolous lawsuit, including retaining counsel.

## COUNT I - VIOLATIONS OF FDCPA AGAINST ALL DEFENDANTS

70. Heriberto repeats and realleges paragraphs 1 through 69 as though fully set forth herein.

71. The Collection Case was an attempt to collect a "consumer debt" as defined by the FDCPA, 15 U.S.C. §1692a(5).

72. MCM prepares affidavits for the lawsuits that Midland files, including the Fruth affidavit in this case.

73. MCM prepares these affidavits knowing that they do not meet the pleading requirements of 735 ILCS 5/2-403(a) and that they are based on information that does not qualify for the business record exception to the rule against hearsay.

74. As the parent company to Midland and MCM, Encore funds the purchase of accounts and directs the collection on those accounts. As such, Encore is liable for the acts of its agents, Midland and MCM.

75. Defendants violated 15 U.S.C. §§1692d, 1692e, e(2), e(5), e(10) and (f) by filing the Collection Case based on unverified account information.

76. Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

77. Midland's filing of the Collection Case, while knowing that it could not prevail at trial, and would dismiss the Collection case if challenged, served only to harass Heriberto in an attempt to improperly collect on the HSBC account.

78. Defendants violated 15 U.S.C. §1692e and e(10) by using a false, deceptive, or misleading representation or means in connection with the collection of any debt. The filing of

11

the Collection Case was false and deceptive because Midland could not demonstrate ownership of the HSBC account. As discussed above, the false Fruth affidavit was intended to deceive and intimidate Heriberto into paying Midland on the HSBC account by misrepresenting the evidentiary support for the claims asserted therein, including that Midland purchased the HSBC account and the balance due.

79. Alternatively, Midland's Complaint and Fruth affidavit are inherently deceptive, false, and misleading because they are based on unverified information that Midland acquired "as-is" (the single-line data file); not the original account records. Yet, in her affidavit Fruth states, "I have access to and have reviewed the records pertaining to the account … [t]he records are kept in the ordinary course of business." *See* Exhibit B-1.

80. Defendants violated 15 U.S.C. §1692e(2) by falsely representing the character, amount, and status of the HSBC account because Midland did not own the HSBC account. Even if Midland did own the HSBC account, it would have no way of determining the amount claimed. Thus Midland's assertions as to its ownership and knowledge of the HSBC account information set forth in the Midland Complaint and Fruth affidavit were false.

81. Defendants violated 15 U.S.C. §1692e(5) by threatening to take action that it did not intend to take when it filed the Collection Case knowing that it could not prevail at trial, and that it would dismiss its case if challenged. As stated above, Midland does not intend to prove its case at trial; rather its business model is to obtain a default judgment or dismiss the action to avoid getting caught and losing at trial.

82. Defendants violated 15 U.S.C. §1692(f) by using unfair means to collect or attempt to collect any debt. Midland's filing of the Collection Case, while knowing that it could not prevail at trial, was unfair because Heriberto had to spend time and money defending against

a frivolous lawsuit. Moreover, Midland's pattern and practice of filing collection actions against consumers, without conducting a reasonable investigation into its claims or disclosing its lack of evidence, with the intent of obtaining a default judgment, amounts to an unfair debt collection practice effectuated through the courts. This practice is unfair to the consumer and against public policy.

83. Midland was aware at the time that it allegedly purchased the HSBC account that any data it received was being sold "as-is" and that it could not verify the accuracy of the data.

84. Nevertheless, Midland filed the Collection Case in order to induce Heriberto to pay the amount allegedly owed to Midland.

85. Midland's Complaint is a material violation of the FDCPA because Midland effectively represents to consumers that it can prove ownership of the alleged debt when it cannot.

86. It is Midland's regular business practice to file claims against consumers even though it cannot verify the data in its complaints.

87. As pled in paragraphs 67 through 69 above, Heriberto was harmed by Midland's unfair and deceptive practices.

88. Heriberto is therefore entitled to an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. §1692k.

WHEREFORE, Plaintiff, HERIBERTO SANCHEZ, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. ordering the deletion of all adverse credit reporting related to the alleged debt;

d. awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e. awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATION OF ICFA AGAINST ALL DEFENDANTS

89. Heriberto restates and realleges paragraphs 1 through 69 as though fully set forth herein.

90. Encore is liable for the acts of its agents, Midland and MCM.

91. Defendants violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in their efforts to collect an unverified debt from Heriberto.

92. Defendant's active participation in the Collection Case, while knowing that they could not prevail at trial, was intended only to deceive Heriberto into thinking he would have to pay Midland to avoid a judgment against him.

93. Midland does not conduct a reasonable investigation into a debt's existence in the collection actions it files; rather Midland intends to obtain a default judgment against the consumer by representing to the consumer and the court, through the filing of its complaint and affidavit, that it has evidence to support the claims stated therein.

94. Midland's pattern and practice of filing collection actions against consumers, without conducting a reasonable investigation into its claims or disclosing its lack of evidence, with the intent of obtaining a default judgment, amounts to an unfair debt collection practice effectuated through the courts.

95. Defendants pattern and practice described above amounts to an unfair, deceptive and improper use of the courts in connection with the collection of a debt.

96. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

97. Heriberto is a consumer as defined by ICFA, 815 ILCS 505/1(e).

98. Defendants' attempt to collect a debt is part of the conduct of any trade or commerce as defined by ICFA, 815 ILCS 505/1(f).

99. The Collection Case and the related Midland Complaint and Fruth affidavit represent the use of deception, fraud and false pretense in an attempt to collect an unverified debt.

100. Midland's active concealment of its lack of evidence to support its claims represents a material misrepresentation, made in the conduct of trade or commerce.

101. Midland intended that Heriberto rely on its misrepresentations and pay Midland the amount claimed.

102. Additionally, Midland's abusive trial strategy was inherently unfair to Heriberto— Midland represented that it could prove its case at trial, and that it would be able to

demonstrate its standing to sue at trial. All the while, Midland knew it could not support its case with sufficient evidence and it never intended to go to trial.

103.   As a result of this unfair and deceptive conduct, Heriberto had to expend time and money defending against a lawsuit that Midland had no intention of litigating.

104.   ICFA further states:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper. 815 ILCS 505/10a.

105.   Heriberto was harmed by Defendants' unfair and deceptive practices because he had to spend time and energy defending the frivolous Collection Case.

106.   Heriberto was further harmed by Defendants' unfair and deceptive practices as he incurred costs by retaining counsel to defend the frivolous Collection Case.

107.   Heriberto was also exposed to significant emotional strain as a result of Defendants' unfair and deceptive business practices.

108.   Moreover, upon information and belief, these unfair and deceptive practices are part of a pattern and practice of behavior in which the Defendants routinely engage as part of their business model.

109.   An award of punitive damages is appropriate because Defendants' conduct described above was willful and wanton, and showed a reckless disregard for the protections afforded by ICFA, and Heriberto's rights thereunder.

110.   As such, Heriberto is entitled to relief pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiff, HERIBERTO SANCHEZ, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff actual damages and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. ordering the deletion of all adverse credit reporting related to the alleged debt;

d. awarding the Plaintiff costs and reasonable attorney fees; and

e. awarding any other relief as this Honorable Court deems just and appropriate.

Dated: July 20, 2014                        Respectfully Submitted,

/s/ Mohammed O. Badwan
/s/ Daniel J. McGarry
Mohammed O. Badwan, Esq. ARDC#6299011
Daniel J. McGarry, Esq. ARDC#6309647
Counsel for Plaintiff
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188